UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YAFA YAFIT RAN, Plaintiff, -v- MOUNT SINAI WEST MEDICAL CENTER, Defendant. | 25 Civ. 2235 (PAE) ORDER |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Yafa Yafit Ran, then proceeding *pro se*, brought this action against defendant St. Luke's-Roosevelt Hospital Center, sued as Mount Sinai West Medical Center ("St. Luke's"), asserting claims under 42 U.S.C. § 1983, the New York Public Health Law, the New York Mental Hygiene Law, and New York common law. Dkt. 30 ("AC"). Currently pending is St. Luke's motion to dismiss the amended complaint ("AC") under Federal Rule of Civil Procedure 12(b)(6). Dkt. 36.

On June 8, 2026, the Honorable Henry J. Ricardo, United States Magistrate Judge, issued a Report and Recommendation as to the motion to dismiss. Dkt. 48 (the "Report"). The Report recommends that this Court grant the motion and dismiss (1) Counts II, III, IV, VI, VII, VIII, IX, X, XII, XIII, XIV, XV, and XVIII with prejudice, and (2) Counts I, V, XI, XVII, and XIX without prejudice. *Id.* at 1.

On August 22, 2026, Ran, now represented by counsel, filed objections to the Report. Dkt. 62 ("Obj."). On September 8, 2026, St. Luke's opposed Ran's objections, requesting that the Court adopt the R&R in full. Dkt. 63 ("Opp.").

For the following reasons, the Court adopts the Report's recommendations in full.

## I. Legal Standard

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party makes specific objections, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). By contrast, "[t]o accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *King v. Greiner*, No. 2 Civ. 5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

The same clear-error standard applies where a party makes only "frivolous, conclusory or general objections, or simply reiterates [his] original arguments." *Kamden-Ouaffo v. Balchem Corp.*, No. 17 Civ. 2810, 2021 WL 1101126, at *2 (S.D.N.Y. Mar. 23, 2021) (quoting *Velez v. DNF Assocs., LLC*, No. 19 Civ. 11138, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020)). To trigger *de novo* review, objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Green v. Dep't of Educ.*, No. 18 Civ. 10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020) (quoting *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009)), *aff'd*, 16 F.4th 1070 (2d Cir. 2021)

## II. Applicable Standard of Review

The Court reviews the Report's unobjected-to findings for clear error and its objected-to findings *de novo*.

Ran makes three main objections, all directed at the Report's findings that certain claims are untimely. First, she objects to the recommendation that the medical-malpractice claim (Count IV) be dismissed with prejudice. She argues that the applicable statute of limitations is

not clear from the face of the AC, such that dismissal on untimeliness grounds is inappropriate. Obj. at 1, 15–17. Second, she objects to the recommendation that the claims under New York Public Health Law § 2805-D and § 18(3) (Counts II and III), and for negligence (Count XII), breach of fiduciary duty (Count XIII), negligent infliction of physical injury (Count XV), and gross negligence (Count XVIII) be dismissed with prejudice. *Id.* at 2, 7–15, 17–21. She argues that these claims sound in ordinary negligence, not medical malpractice, and thus are subject to the three-year limitations period under N.Y. Civil Practice Law Rule § 214 ("CPLR § 214"), not the shorter one applied by the Report. *Id.* Finally, Ran objects to the dismissal with prejudice of her claim for negligent infliction of emotional distress ("NIED") (Count VIII), arguing similarly that this claim sounds in ordinary negligence, not intentional tort, such that it is timely. *Id.* at 2, 22–24.

These objections are sufficiently specific and nonfrivolous to warrant *de novo* review. The Court thus reviews *de novo* the Report's contested recommendations. *See, e.g.*, *In re Nestor*, No. 24 Civ. 6250, 2025 WL 2089353, at *2 (S.D.N.Y. July 25, 2025) (reviewing *de novo* recommendation that dismissal be without prejudice); *Richardson v. City of New York*, No. 21 Civ. 5080, 2023 WL 1777323, at *2 (S.D.N.Y. Feb. 6, 2023) (Engelmayer, J.) (same).

## III. Analysis

The Court adopts the Report's detailed account of the facts and procedural history, to which no party objects.

The Court also adopts the Report's unobjected-to conclusions that: (1) the § 1983 claim (Count I) fails because the AC does not plausibly allege that St. Luke's acted under color of state law, *see* Report at 5–8; (2) the claims under the New York Mental Hygiene Law (Count VI), and those for false imprisonment (Count IX), battery (Count X), and assault (Count XIV) fail because they are untimely, *see* Report at 14–16; (3) the defamation *per se* claim (Count V) fails

because the AC does not plausibly allege facts establishing publication, *see* Report at 16–17; (4) the intentional infliction of emotional distress ("IIED") claim (Count VII) fails because it is untimely, *see* Report at 17–18; (5) the fraud and fraudulent misrepresentation claim (Count XI) fails because the AC does not plausibly allege that Ran relied on St. Luke's allegedly false medical records, *see* Report at 19–20; (6) the negligent hiring, training, and supervision claim (Count XVII) fails because it rests on a conclusory allegation devoid of supporting facts, *see* Report at 20–21; and (7) the intentional interference with prospective economic advantage claim (Count XIX) fails because the AC recites the elements of the claim without alleging supporting facts, *see* Report at 21–22. The Court reviewed these conclusions for clear error, and, persuaded by Judge Ricardo's well-reasoned analysis, finds none. The Court is not "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Accordingly, the Court will adopt the Report's recommendations to (1) dismiss Counts VI, VII, IX, X, and XIV with prejudice; and to (2) dismiss Counts I, V, XI, XVII, and XIX without prejudice.

The following is the Court's assessment, on *de novo* review of the Report's recommendation, contested by Ran, that Counts II, III, IV, VIII, XII, XIII, XV, and XVIII be dismissed with prejudice. *See Bailey v. U.S. Citizenship & Immigr. Servs.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) (internal citation omitted).

**A. The Medical-Malpractice Claim (Count IV)**

Ran objects to the Report's finding that the AC's medical-malpractice claim is time-barred. Under CPLR § 214-a, "[a]n action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission, or failure complained of." Ran does not dispute that her latest treatment date at St. Luke's was March 30, 2022; that she filed her initial complaint nearly three years later, on March 14, 2025; or that neither the

continuing violation doctrine nor equitable tolling would make a medical malpractice action timely. *See* Obj. at 1, 15–17; Report at 9–14. Instead, Ran argues that the Report erred in applying CPLR § 214-a's statute of limitations because it is not clear from the face of the AC whether the examination underlying the medical malpractice claim involved medical services. Obj. at 15–17. Ran's argument hinges on *Karasek v. LaJoie*, 92 N.Y.2d 171, 177 (1998), which held that "the services provided by psychologists, however scientifically based they may be, are not 'medical' services within the meaning of CPLR 214-a." Obj. at 15.

*Karasek* held that diagnostic services rendered by psychologists do not necessarily qualify as medical services within CPLR § 214. 92 N.Y.2d at 176–77. The court there noted that construing "medical services" to cover diagnostic services rendered by psychologists or other providers who lack medical training would "lead to wildly overinclusive results"—and could subject claims arising from the services of social workers, clerics, guidance counselors, or even "faith healers" to the shorter limitations period for medical-malpractice claims. *Id.* at 175–76. The *Karasek* court emphasized, however, that "diagnostic and treatment services provided by—or under the supervision of—medically trained psychiatrists are" indisputably "'medical' in nature," because psychiatrists have medical training. *Id.* at 176–77.

That aspect of the *Karasek* ruling is decisive here. Ran's AC unambiguously and repeatedly describes the conduct underlying the medical-malpractice claim as involving *psychiatric* medical services. It alleges that Ran was given "false psychiatric diagnoses" after undergoing a "psychiatric examination," resulting in the creation of "false psychiatric records." AC ¶¶ 4, 67, 85. The AC uses the word "psychiatric" nearly 100 times. *See, e.g.*, AC ¶¶ 1, 4, 19, 25, 40, 51, 61, 67, 71. Ran's complaint does not leave any room to question that her medical-malpractice claim is based on diagnostic services provided by or under the supervision

of at least one psychiatrist. The Report was thus right to find the claim within CPLR § 214-a. Ran's opposition brief tacitly reinforces the point, insofar as it states that Ran spoke to Dr. Nir Ziv "during the incident," and that "Dr. Ziv and Defendant's employees performed a psychiatric evaluation on Plaintiff," after which "Dr. Ziv created medical records." Dkt. 42 at 7.

Because CPLR § 214-a's limitation period applies, and Ran undisputably filed this suit more than two-and-a-half years after the treatment at issue, the medical-malpractice claim is time-barred. *See, e.g.*, *Piacquadio v. Visiting Nurse Servs. in Westchester, Inc.*, 249 A.D.3d 765, 766 (2d Dep't 2026) (dismissing claim sounding in medical malpractice as time-barred under CPLR § 214-a); *Forbes v. Caris Life Scis. Inc.*, 159 A.D.3d 1569, 1571 (4th Dep't 2018) (same); *Backer v. Parsons*, 250 A.D.3d 595, 596 (1st Dep't 2026) (same). The Report rightly recommended its dismissal with prejudice. *Bergrin v. United States*, No. 19 Civ. 9681, 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022) (courts have dismissed complaints without leave to amend where "the claims are barred by applicable statute of limitations"); *see, e.g.*, *Holliday v. Artist*, No. 23 Civ. 2410, 2024 WL 2924146, at *4 (S.D.N.Y. June 7, 2024) (dismissing time-barred claim with prejudice because "any amendment would be futile"); *Gomez v. Mount Sinai Hosp.*, 231 A.D.3d 537, 539 (1st Dep't 2024) (affirming dismissal with prejudice where action was untimely).

### B. The Negligence, Breach of Fiduciary Duty, Negligent Infliction of Physical Injury, Gross Negligence, and New York Public Health Law § 2805-D and § 18(3) Claims

Ran separately disputes the Report's finding that other claims—for negligence, breach of fiduciary duty, negligent infliction of physical injury, and gross negligence, and under New York Public Health Law §§ 2805-D and 18(3)—sound in medical malpractice, implicating the two-year-and-six-month limitations period. Obj. at 2, 7–15, 17–21. She argues that each sounds instead in ordinary negligence, triggering CPLR § 214's three-year limitations period. *Id.*

"In determining whether an action sounds in medical malpractice or simple negligence, the critical question is the nature of the duty to the plaintiff which the defendant is alleged to have breached." *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 304 (S.D.N.Y. 2013). "When the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." *Id.* (quoting *Stanley v. Lebetkin*, 123 A.D.2d 854, 854 (2d Dep't 1986)). The issue is whether the hospital was—or, at the pleading stage, is alleged to have been—negligent "in furnishing medical treatment to a patient" or instead failed in "fulfilling a different duty." *Bleiler v. Bodnar*, 65 N.Y.2d 65, 73 (1985).

The Report rightly concluded that the claims at issue here sound in medical malpractice. Each arises out of some or all of these allegations: (1) St. Luke's failed to perform requested toxicology tests; (2) Ran was subjected to a psychiatric examination and inaccurately diagnosed with paranoia and psychotic disorder; (3) the resulting false medical records have not been corrected; and (4) those false diagnoses led to Ran's wrongful confinement in a psychiatric ward. AC ¶¶ 50–53, 70–73, 76–77, 82–83.[1] These allegations track those underlying Ran's medical-malpractice claim. AC ¶¶ 54–55; *Forbes*, 159 A.D.3d at 1572–73 (holding fraud claim subject to limitations period for medical-malpractice claims where conduct underlying those claims was the same). And each arises from the furnishing of medical treatment.

First, whether to perform a particular diagnostic test is a decision concerning medical treatment turning on medical judgment. *In re Bates v. N.Y.C. Health & Hosps. Corp.*, 194

---

[1] The AC also alleges, relevant to these claims, that St. Luke's performed a psychiatric evaluation without informed consent. Ran's objections clarify that this allegation reprises the above allegation that St. Luke's refused to perform the toxicology test she had requested. Obj. at 21. That decision inherently involves medical treatment.

A.D.2d 422, 424 (1st Dep't 1993) (the "claimed failure . . . to obtain a recommended diagnostic test 'bears a substantial relationship to the rendition of medical treatment by a licensed physician'" (internal citation omitted)). A factfinder called upon to decide whether a doctor breached a duty in failing to order certain tests must determine whether the doctor departed from the standard of care governing medical treatment of a patient. *See, e.g.*, *Weinstein v. Gewirtz*, 208 A.D.3d 717, 718–21 (2d Dep't 2022) (failure to order a diagnostic test analyzed as a medical malpractice claim); *Angrand v. Stern*, 8 A.D.3d 218, 218–19 (2d Dep't 2004) (same); *Perez v. Fitzgerald*, 2012 WL 3264367, at *1 (Sup. Ct. 2012) (same); *Neyman v. Doshi Diagnostic Imaging Servs., P.C.*, 153 A.D.3d 538, 542 (2d Dep't 2017) (expert opined on whether defendant departed from standard of care by failing to order mammogram).

Second, the allegation that a patient was misdiagnosed is a paradigmatic medical-malpractice claim; it, too, entails determining whether a defendant departed from accepted medical practice. *See, e.g.*, *Connolly v. Sanders*, 239 A.D.3d 594, 594–96 (2d Dep't 2025) (analyzing whether defendant departed from accepted medical practice in addressing misdiagnosis claim); *Badescu v. Lewis*, 235 A.D.3d 613, 613–14 (2d Dep't 2025) (same); *Mackauer v. Parikh*, 148 A.D.3d 873, 874–76 (2d Dep't 2017) (same); *Hayden v. Gordon*, 91 A.D.3d 819, 820–22 (2d Dep't 2012) (same).

Third, decisions regarding the creation and maintenance of medical records likewise concern medical treatment. *Harvey v. Cramer*, 235 A.D.2d 315, 316 (2nd Dep't 1997) ("the maintenance of medical records bears a substantial relationship" to diagnosis and treatment of medical conditions). For example, deciding whether records were properly altered or destroyed requires a determination of their accuracy and completeness. *Cf. Lafferty v. Avila*, 2026 WL

2522958, at *4 (1st Dep't, Aug. 27, 2026) (claim that doctor erroneously recorded date on medical record sounds in ordinary negligence).

Fourth, whether St. Luke's unjustifiably confined Ran in its psychiatric ward arises from an exercise of medical judgment. New York State Mental Hygiene Law ("NYSMHL") §§ 9.27 and 9.39 codify the criteria for the involuntary admission and treatment of psychiatric patients. AC ¶¶ 58–59. Under NYSMHL § 9.39, a patient may be involuntarily admitted when a staff physician examines the patient and determines that she has a "mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to themself or others." If the patient is held for more than 48 hours, another staff psychiatrist must examine the patient and confirm the physician's finding. *Id.* Determining whether St. Luke's violated the law by confining Ran would require scrutinizing physicians' medical judgments and whether they comported with these standards. *Morgan v. City of New York*, 32 A.D.3d 912, 914 (N.Y. App. Div. 2d Dep't 2006) ("[A] determination pursuant to Mental Hygiene Law [§] 9 requires a medical judgment by a treating physician."). Decisions regarding confinement and discharge in accordance with statutory criteria thus sound in medical malpractice. *See, e.g.*, *Scott v. Uljanov*, 74 N.Y.2d 673, 674–75 (1989) (treating claim of involuntary commitment in a medical facility as medical malpractice action); *Ferris v. Millman*, 847 N.Y.S.2d 373, 381–82 (Sup. Ct. 2007) (same); *Gallagher v. Cayuga Med. Ctr.*, 151 A.D.3d 1349, 1350–52 (3rd Dep't 2017) (same as to wrongful discharge); *Rodriguez v. City of New York*, 72 F.3d 1051, 1064–65 (2d Cir. 1995) (discussing "generally accepted standards in the medical community as to the circumstances that warrant a physician's order of emergency involuntary commitment").

As the Report further recognized, the AC's claims are well afield from claims sounding in ordinary negligence. When claims in a hospital setting have been held to qualify as ordinary negligence claims, the challenged conduct has concerned administrative or operational duties that do not implicate medical judgment. *See, e.g.*, *Huntley v. State of New York*, 62 N.Y.2d 134, 136–38 (1984) (failure to transmit patient's suicide plan to staff psychologist), *Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784, 786 (1996) (failure to safeguard blood supply from HIV contamination); *Dispenzieri v. Hillside Psychiatric Hosp.*, 283 A.D.2d 389, 389–90 (2d Dep't 2001) (failure to guard patient); *Tracy v. Vassar Bros. Hosp.*, 130 A.D.3d 713, 715 (2d Dep't 2015) (failure to establish procedures governing number of surgeries that could be scheduled in a day); *Bleiler*, 65 N.Y.2d at 73 ("[A] claim that a hospital failed to provide competent personnel or to promulgate appropriate emergency room rules sounds in negligence."). The AC does not allege administrative or operational failures distinct from Ran's medical care.

In her objections, Ran seeks to recast the AC as alleging an administrative or procedural failure as opposed to a medically errant diagnostic or treatment decision—specifically, St. Luke's failure to satisfy the legal prerequisites for an involuntary psychiatric hold. Obj. at 8–9. But the AC itself repeatedly alleges that a psychiatric examination was conducted, and it bases its claims on the theory that the resulting diagnosis was erroneous, not that the examination never took place. *See, e.g.*, AC ¶ 41 (defendants "conducted an unauthorized psychiatric evaluation"); *id.* ¶ 18 ("[t]his case is about" medical professionals who "substituted their own diagnosis of mental illness" and "institutional malpractice"); *id.* ¶ 55 ("The Defendant's conduct fell catastrophically below the standard of care. No competent medical professional conducts a psychiatric evaluation on a coherent patient."). The AC's allegations govern, and the gravamen of these is that St. Luke's errantly examined, diagnosed, and treated Ran.

Because these claims sound in medical malpractice, CPLR § 214-a's two-year-and-six-month limitations period applies to them. The Report was correct that these, too, are untimely and merit dismissal with prejudice. *See, e.g.*, *Piacquadio*, 247 A.D.3d at 766; *Forbes*, 159 A.D.3d at 1571; *Backer*, 250 A.D.3d at 596; *Holliday*, 2024 WL 2924146, at *4; *Gomez*, 231 A.D.3d at 529.

### C. The Negligent Infliction of Emotional Distress (Count VIII) Claim is Untimely

Ran, finally, objects to the finding that the AC's NIED claim is untimely, arguing that such claims are inherently subject to a three-year limitations period. Obj. at 22 (quoting *Kramer v. Meridian Cap. Grp., LLC*, 201 A.D.3d 909, 912 (2d Dep't 2022)). But "all four New York State Appellate Division courts have held that [NIED] claims may never be brought when the challenged conduct falls well within the ambit of other traditional tort liability."[2] *Gabilly v. City of New York*, No. 19 Civ. 11884, 2021 WL 3667981, at *5 (S.D.N.Y. Aug. 17, 2021); *see also Vivar v. City of New York*, No. 18 Civ. 5987, 2020 WL 1505654, at *16 (S.D.N.Y. Mar. 30, 2020) (NIED torts "may be invoked only as a last resort" (internal citation omitted)). "This pleading limitation prevents plaintiffs from bringing time-barred intentional tort claims by recasting them as negligence claims governed by a longer statute of limitations." *Corrigan v. Town of Brookhaven*, No. 22 Civ. 4688, 2023 WL 7003936, at *2 (Oct. 23, 2023).

---

[2] Ran asserts that an emotional-distress claim may survive even if it duplicates a tort claim if the tort claim was dismissed as untimely. Obj. at 23. But the case on which she relies is distinguishable, because it involved a potentially duplicative IIED, not NIED, claim, and the tort claims there had been dismissed in a separate action that was not part of the appeal. *164 Mulberry St. Corp. v. Colum. Univ.*, 4 A.D.3d 49, 58 (2004). Extending *164 Mulberry*'s reasoning to the NIED context is not justified on this record, where the inclusion of an NIED claim is facially an attempt to evade the statute of limitations in a case concerning intentional conduct.

Ran depicts the NIED claim as arising from the distress inflicted by St. Luke's (1) "unconsented psychiatric confinement" of her and (2) "refusal to perform the toxicology screen she requested." Obj. at 23. Ran cannot recast intentional conduct—confinement and refusal to perform a toxicology test—as negligence, in order to evade the statute of limitations. *See, e.g.*, *McDonald v. Riccuiti*, 126 A.D.3d 954, 955 (2d Dep't 2015) ("[P]laintiff could not avoid the running of the limitations period merely by attempting to couch the causes of action as sounding in negligence."); *Corrigan*, 2023 WL 7003936, at *2 ("Permitting plaintiffs to maintain [an NIED] action here would essentially create an end-run around the statute of limitations, which has been consistently rejected by New York courts."). Thus, the NIED claim cannot be independently maintained. *See, e.g.*, *Cabrera v. City of New York*, No. 16 Civ. 1098, 2017 WL 604011, at *11 (S.D.N.Y. Dec. 4, 2017) (dismissing NIED claim because challenged conduct sounded in traditional tort liability); *Vassiliou v. City of New York*, No. 18 Civ. 779, 2021 WL 76916, at *14 (E.D.N.Y. Jan. 7, 2021) (same).

The tort statutes within whose ambit Ran's NIED claim falls have preclusive limitations periods. As to the first theory, where a claim arising from involuntary psychiatric confinement is "in essence" a false imprisonment claim, it is governed by CPLR § 215(3)'s one-year limitations period. *Bryden v. Wilson Mem'l Hosp.*, 136 A.D.2d 843, 843–44 (3d Dep't 1988)). As to the second, it sounds in medical malpractice and is untimely under the two-year-and-six-month limitations period. *See, e.g.*, *Piacquadio*, 247 A.D.3d at 766; *Forbes*, 159 A.D.3d at 1571; *Backer*, 250 A.D.3d at 596. Either way, the claim would be time-barred. The Court dismisses it with prejudice. *See, e.g.*, *Holliday*, 2024 WL 2924146, at *4; *Gomez*, 231 A.D.3d at 529.

**CONCLUSION**

For the foregoing reasons, the Court adopts Judge Ricardo's Report in its entirety. The Court grants the motion to dismiss and respectfully directs the Clerk of Court to mail a copy of this decision to Ran at the address on file, terminate the motion pending at docket 35, and close this case.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: September 23, 2026
New York, New York